The opinion of the Court was delivered by
Poché, J,
Under the decree of our immediate predecessors, remanding this case, our inquiry must he restricted to an adjudication, “ as to the cause of what is termed the last fire,” which finally and completely *250 destroyed the insured sugar house, one-third part of which had already been destroyed by fire, caused by the explosion which occurred on Friday morning, November 29th.
Wo must first dispose of some doubts suggested by the District Judge, and by plaintiff's counsel, as to the true import and effect of the opinion of our predecessors, and of their decree in remanding the cause.
It lias been intimated that the Supremo Court did not reverse its previous decree, or intend to annul and set aside the judgment, of the lower court then on appeal.
A careful reading of the opinion and decree on rehearing, dispels all doubts on both of those propositions. True, the 2>revions decree of the Court, and the judgment then on appeal are not reversed in so many words, hut the intention of tho Court to reverso both is manifest from the conclusions reached on rehearing, and by the decree rendered.
In the judgment ai>poalcd from, it had been adjudicated that the exiilosion was not the cause of either fire, or of the destruction of the building, and that judgment had been affirmed in the first decree of our 2>rcdecessors, who had therein found that the cx2)losion 'had not caused either the first, the second, or the third fire. In the remanding opinion, however, they concluded that the first two fires, as they are called, had been caused by the explosion, and they reserved their O2>inion as to the nature of tho third fire.
It is therefore clear that so much of the first o2>inion as decides that tho ex2>losion had not caused the first two fires, is reversed liy the subsequent opinion, which holds that it had, and that the other 2>art of the first opinion which announces that the third fire wasnot traceable to the explosion, is reversed by the subsequent deorec, reserving- an expression of, or giving no opinion on this identical 2>oint.
It is, therefore, an irresistible conclusion, that tho 2>revious decree of the Court was reversed by the latter, and that the judgment, of the lower court shared the fate of the 2>revious decree 2>roviously rendered in affirmance thereof.
Under the foregoing ex2>lanation, the status of the case, when it reached the District Court, was on an adjudication attributing the origin of the first two fires to the explosion, and directing the lower court to investigate and to ascertain the cause of the so-called third fire, and to that end, to receive and to consider additional evidence, if offered by both parties.
The ease now comes on appeal from a judgment in favor of plaintiff, for the Ml amount‘of his claim.
Considering the grave doubts left on the minds of our predecessors, after mature consideration of the issues involved, and of the evidence *251 adduced in the controversy, we have bestowed more than usual labor on, and very serious attention to the evidence found in the very voluminous record in the case.
The evidence shows that the sugar house was a two-story building, 204 feet long, 42 feet wide, and 24 feet high, that the lower story was divided in two compartments by a partition wall, making one compartment, known as the purgery or cisterns, 171 feet in length, and a second compartment, 93 feet in length, which contained the juice boxes, in which tlic juice flowed through pipes from the mill, and from which it was pumped up as needed into the clarifiers, and that the latter, together with the mill and engine, the evaporators, the doctor engine, the strike-pan and the coolers, were all situated in the upper story, which was not divided Inj a partition wall, hut was a single and undivided compartment. The coolers, a portion of the evaporators, and the strike-pan, were in that part of the tipper story which was immediately above the purgery, and the other apparatus above described in the other portion, usually designated by the witnesses as the “ engine room.” Unlike other sugar houses, in which the juice is boiled or cooked in kettles, heated by a furnace with a large and intense fire, this sugar house contained a steam strain, or large pans, in which the juice was cooked l>y means of steam pipes, connected with boilers, four in number, situated outside of the main building, opposite to, and six feet from that part of the building known as the “ engine room.” Those boilers, which furnished steam for the engine, as well as for the boiling apparatus, and for other purposes, are the boilers which exploded on' Friday morning at about four o'clock.
As shown by tlie evidence, and as found by our predecessors, tills explosion was terrific and very disastrous; it killed two men and wounded others ; it demolished a part of the. sugar house, and set fire to the engine-room, where the fire was subdued, hut not extinguished, for it again broke out in the same part of the building, during the ensuing night at about .1.1-3, o’clock, and consumed all that part of the building up to within ten feet of the purgery.
To this extent, the continuity of the fire caused by the explosion is judicially ascertained, and the question now remaining for solution is whether the destruction of the remainder of the building was by a continuous fire, as thus originatiug, or whether the conflagration can he traced to another or intervening cause.
In our consideration of this point, we shall adopt and he guided by the rule laid down by Greenleaf, and by many other authorities which we have examined in this connection, and which was fully recognized by our learned predecessors in this case.
Under this rule, it ivas incumbent on plaintiff to rehut the presump *252 tion in favor of the continuity of the fire, and this he has failed to accomplish.
He relies upon the testimony of Glynn, the owner of the plantation, Villeré, his overseer, Lappington, his engineer, Grant, Ms assistant engineer, Wilson, his brother-in-law, Foreman and Porter, laborers on the place, who all testify that on Friday night after the destruction of one-third of the sugar house, the fire had been completely extinguished, and put out, and that there was no fire on Saturday, or on that night, until the next morning, within a short time before the final and destructive conflagration.
But Villeré, Lappington, Grant and Porter, all admit that during that same time, a window frame on the gable end of the building was continually on fire, and that it was too high to be reached by buckets with water.
It is also to be noted that all these witnesses testified with equal assurance that all fire had been completely put out after the first fire of Friday morning, notwithstanding which declarations, it has been judicially settled that the second fire, so called, was the same as, or a continuity of, the first fire.
We must conclude, as our predecessors had evidently done, that in testifying that thejftre had been put out, these witnesses meant that the conflagration had been subdued, checked, or put out, and that as far as their senses could assist them, the fire appeared to have ceased, and to liave disappeared, and hence their statements as to the fvre having been entirely put out, after the first conflagration, as well as after the secoud, were mere opinions — entitled to very little weight, when made by witnesses who have not been introduced as experts, but merely for the purpose of testifying on facts.
But, even as opinions, these statements are contradicted by the testimony of Glynn, who informs us that during all day Saturday he had guards who poured water on fire whenever they scnv any, and who relates that at lli o’clock,-in the night of Saturday, he had been warned in his sick bed of the existence of fire under the mill, that he had gone to the sugar house with men, and had caused water to be poured on it.
When pressed to explain the cause of the last fire, several of these witnesses charge it to the act of an incendiary, and base that opinion on the fact that the sugar house, being constantly guarded, the fire could not have made the rapid progress with which it devoured the building, without being discovered at its beginning. This theory is also adopted by plaintiff’s counsel, who submit it to our consideration. But it is not satisfactory to our minds. If the vigilant guard, which they claim had been constantly on the alert, so as to detect any or the *253 first appearance of a fire, liad done its duty, tlie same vigilance would have frustrated the design of an incendiary.
If, on the other hand, the watchman had been careless enough to allow to an incendiary the chance and the time to set this building on fire near the place where Lappington and Grant were in bed, the same negligence would have escaped the bursting of a fire from the charred ruins of the engine room, which, under the effect of a strong wind blowing in the direction of the purgery, soon became a blaze beyond human power.
The truth is, that the guard was not vigilant, for Porter, who was placed on watch after midnight, admits that he absented himself from the premises, and was absent when the fire broke out, and that on his return he found the sugar house in full blaze.
We are borne out in our conclusion upon this point by the testimony of Blouin, a disinterested witness, who was on a business visit to Mr. Glynn, and who testifies that about 11 o’clock, on Saturday night, he saw fire in some timbers under the mill, with a strong wind blowing in the direction of the purgery, and that he saw no guard or watch in and around the building, of all of which facts he gave immediate information to Glynn.
We attach a great deal of importance to the testimony of this witness, which stands uncontradicted as to the main facts which it covers, and which goes a great way to show that the fire, called the third fire, was a continuation of the same fire which had been caused by, and is, in our opinion, fully traced to the explosion.
In considering the testimony of this witness, we omit to weigh any matter of opinion which he expresses, but restrict our consideration to the facts which he deposes, and which establish beyond a doubt, the existence, at 11 o’clock Saturday night, of fire in the ruins of the burned portion of the building, and the prevalence of a strong wind blowing in the direction of the remaining portion of the building. Hence, we find the testimony strengthening, instead of rebutting the presumption in favor of the continuity of the fire caused by the explosion.
After a thorough examination of all the evidence in the case, we find more circumstances showing the continuity of the fire after the second fire, than after the first, and we fail to discover any evidence supporting a rational conclusion that a new cause had intervened between the accomplished fact and the cause alleged by defendant. Insurance Company vs. Tweed, 7 Wallace, 52.
As it appears from the description which we have given of the sugar house, it contained a steam-train for the purpose of boiling the juice, instead of the old system of kettles, and hence that prolific source *254 of sugar house fires must be eliminated as a possible cause of the fire in this case. •
A great deal of stress is laid by plaintiff on the statement made by the witness Lappingfcon, to the effect that the remaining portion of the building, or the purgery, and the portion ruined by the previous explosion and the preceding fires, were separated by a solid brick, wall. In this connection defendant introduced testimony- to show the existence of a door in the partition wall. While plaintiff strenuously denies the existence of such door, it is worthy of note that he, the former owner of that building which he himself had erected, did not offer his testimony or that of any other witness on this point, a true knowledge of which was so peculiarly under his control. We believe that such a door did exist, but it might have been closed, and hence, we attach no great importance to that part of the contention, for the reason that the evidence shows that the Avail in question extended only up to, but did not include the upper story of the sugar house, and that the roof of the building over the engine room had been completely destroyed by fire to within ten feet of purgery. Hence, it is apparent that the whole of the upper story Avas fully open at the end towards the engine room, wliich Avas in ruins, and Avhich is shoAvn to have been continuously under a smouldering fire.
None of the witnesses have been able to show the exact spot of the purgery Avhere the last fire caught. Laqjpington and Grant were asleep, and Avere awakened by the smoko, Villeré and Glynn Avere at their respective houses, Porter, the guard, had gone to a house Avhere lay the bodies of two victims of the explosion, and all five testify that when they reached the spot, so as to obtain an accurate aúcav of the state of things, the fireAvasabig blaze and beyond control. Porter, however, who first reached the place, states that the beginning Avas in the roof, near the partition between the two compartments.
If the necessities of the case requii’ed it, a clear demonstration could be reached under the evidence, to sIioav that the fire proved to exist under the mins of the engine room had been kindled by the violent AAÚnd then blowing, and had thereby been communicated to the rafters-of the purgery part of the building.
We have gone further in the analysis of the testimony than was required under the rule of evidence, which imposes on plaintiff the burden to rebut the legal presumption in favor of the continuity of the fire which is sTioaati to have originated from the explosion. As it is, the effect of the evidence on our minds, is to convince us that had not the explosion occurred on Friday morning, the sugar house would not have been destroyed by fire on the Sunday morning following, or, in other *255 words, that the explosion was the direct and proximate cause of the destruction of the building.
Hence, we conclude that under the terms of the policy, the defendant is not liable for the loss sustained by plaintiff, and that the j udgment appealed from should not be maintained.
It is therefore ordered, adjudged and decreed, that the judgment of the lower court ho annulled, avoided and reversed; and it is further ordered, that there he judgment in favor of defendant, rejecting plaintiff’s demand, and dismissing Ms action at his costs in both courts.
Rehearing refused.
The Chief Justice, having-boon of counsel in a suit on the same facts against another Insurance Company, whom be represented, takes no part in tills opinion and decree.